UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH RAKOFSKY, | Case No.   22-cv-04427-EJD |
| Plaintiff, | |
| | **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| | Re: ECF No. 36 |
| MERCEDES-BENZ USA, LLC, et al., | |
| Defendants. | |

Plaintiff Joseph Rakofsky ("Plaintiff") filed this action against Mercedes-Benz USA, LLC ("MBUSA"), Daimler Aktiengesellschaft, Mercedes-Benz of Monterey ("Monterey MB"), Wienik Bleyenberg, Devon Thompson, and Does 1 to 10 (collectively, "Defendants").  Plaintiff brings various claims related to Defendants' work on Plaintiff's 2011 Mercedes-Benz ML350 BlueTEC.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, Mercedes-Benz USA's motion for judgment on the pleadings is GRANTED with leave to amend.

## I.      BACKGROUND

### A.      Factual Allegations

Unless otherwise specified, the following allegations are drawn from the Complaint.

Plaintiff owned a 2011 Mercedes-Bens ML350 BlueTEC (the "Subject Vehicle") that required repair due to a broken turbo.  Compl. ¶ 9.  In January 2022, Plaintiff paid a certified Mercedes-Benz repair facility in Florida to install a new turbo manufactured and sold by Mercedes-Benz.  *Id.* ¶ 10.  The brand-new turbo came with a warranty.  *Id.* ¶ 12.  Plaintiff

United States District Court
Northern District of California

1  thereafter drove the Subject Vehicle to California where it became inoperable about a month later,

2  on February 7, 2022. *Id.* ¶ 14.  That day, the Subject Vehicle was towed to and diagnosed by a

3  California certified Mercedes-Benz repair facility, which is operated and owned by a Mercedes-

4  Benz "Master Technician." *Id.* ¶ 16.  Plaintiff alleges that at the time the Subject Vehicle was

5  towed to the repair facility, no "check engine" or other warnings were present. *Id.* ¶ 17.  The

6  repair facility in California, through the "Master Technician," determined that the reason the

7  vehicle became inoperable was because the turbo was broken. *Id.* ¶ 18.

8      Two days later, the Subject Vehicle remained inoperable and was towed to Defendant

9  Mercedes-Benz of Monterey. *Id.* ¶¶ 19–20.  When the Subject Vehicle arrived at Monterey MB,

10  the "check engine" warning was present on the dashboard. *Id.* ¶ 21.  That same day, Plaintiff

11  advised Monterey MB that (1) the turbo was only purchased approximately a month prior and

12  carried with it a full warranty, and (2) Defendants were responsible for replacing parts "pursuant

13  to the Settlement Agreement" in "a previous Class Action lawsuit." *Id.* ¶ 23.  Plaintiff also told

14  Monterey MB, through the "Master Technician," that the broken turbo "constituted consequential

15  damages, which flowed from the fundamental problem, which was the subject matter of the []

16  Class Action lawsuit." *Id.* ¶ 24.  Plaintiff alleges that Defendants "rejected this information" and

17  expressly refused to perform any repairs until "the automotive parts required in order to repair the

18  Class-Action repairs arrived first." *Id.* ¶¶ 25–26.

19      Plaintiff alleges that Defendants blamed him and the Florida repair facility for the damage

20  the Subject Vehicle sustained on February 7, 2022. *Id.* ¶ 29.  Defendant Wienik Bleyenberg

21  allegedly admitted on February 23, 2022 that the turbo purchased and installed by the Florida

22  repair facility "did nothing improper" and agreed to replace the turbo "under [Mercedes-Bens]

23  parts warranty." *Id.* ¶¶ 32–33.  Notwithstanding this, Mr. Bleyenberg told Plaintiff that Plaintiff

24  would be liable for the damage because he elected to have the repair performed at the Florida

25  repair facility, a certified Mercedes-Benz facility, instead of at a Mercedez-Benz dealership.

26  *Id.* ¶ 35.  Mr. Bleyenberg also told Plaintiff on February 25, 2022, that he operated the engine

27  despite it lacking oil and as a result, the engine suffered damage while the turbo was being

28  Case No.: 22-cv-04427-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

1    replaced. *Id.* ¶¶ 39–41. Defendants, through Mr. Bleyenberg, refused to repair the damaged

2    engine, and told Plaintiff the repair would cost approximately $35,000. *Id.* ¶ 43.

3        **B.    Procedural History**

4        Plaintiff initiated this lawsuit on March 2, 2022, in the Monterey County Superior Court.

5    *See generally* Compl. Plaintiff brought claims against all Defendants for (1) unjust enrichment,

6    (2) unfair business practices in violation of California's Business and Professions Code §17200,

7    (3) breach of contract, (4) breach of warranties, (5) negligent misrepresentation, (6) declaratory

8    and injunctive relief, and (7) fraud. *Id.* at 7–12. Plaintiff seeks relief in the amount of $14,604.79

9    (the purchase price of the Subject Vehicle), $10,000 (cost of previous repairs made within the past

10   six months from filing the Complaint), $35,000 (cost of the repair of the engine), $2,000 (car

11   rental fees), and $2,000 (hotel fees). Plaintiff also requests attorneys' fees, costs, and punitive

12   damages.

13       Defendant MBUSA removed the action to this Court on July 29, 2022 and answered the

14   Complaint on August 10, 2022. Notice of Removal, ECF No. 1; Answer to Complaint, ECF No.

15   12.

16       On June 15, 2023, MBUSA filed the present Motion. On June 29, 2023, Plaintiff filed an

17   opposition and on July 6, 2023, MBUSA filed a reply. Opposition to Motion for Judgment on the

18   Pleadings ("Opp."), ECF No. 38; Reply in Support of Motion for Judgment on the Pleadings

19   ("Reply"), ECF No. 39.

20   **II.    LEGAL STANDARD**

21       A motion for judgment on the pleadings under Rule 12(c) challenges the legal sufficiency

22   of the opposing party's pleadings and operates like a motion to dismiss under Rule 12(b)(6).

23   *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006). "[T]he same standard

24   of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions

25   are "functionally identical." *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

26   The Court will "accept factual allegations in the complaint as true and construe the pleadings in

27   the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*,

28   Case No.: 22-cv-04427-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

3

1    519 F.3d 1025, 1031 (9th Cir. 2008).  A district court generally may not consider materials beyond

2    the pleadings in evaluating a Rule 12(c) motion.  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189

3    F.3d 971, 981 n.18 (9th Cir. 1999).  The court may, however, consider materials properly subject

4    to judicial notice or incorporation by reference.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988,

5    998 (9th Cir. 2018).  Judgment on the pleadings is appropriate if, assuming the truth of all material

6    facts pled in the complaint, the moving party is entitled to judgment as a matter of law.  *Hal Roach*

7    *Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

8    **III.    REQUEST FOR JUDICIAL NOTICE**

9    MBUSA requests the Court take judicial notice of six documents consisting of Plaintiff's

10   Complaint in this action and five other district court records submitted in the *In Re Mercedes-Benz*

11   *Emissions Litigation ("Emissions")*, No. 16-cv-00881-KM-ESK (D.N.J.) matter.  Request for

12   Judicial Notice ("RJN"), ECF No. 37.  Plaintiff opposes the request on the grounds that none of

13   the documents are "relied upon by the Complaint," Defendants have not established that the Class

14   Action settlement documents are applicable to Plaintiff's case, and because the documents are

15   "prejudicial, confusing, and misleading per Fed. R. Evid. 403."  Opp. 2.

16   The doctrine of judicial notice is one of the two doctrines—the other being the doctrine of

17   incorporation by reference—under which a district court may consider material outside the

18   pleadings without converting a motion to dismiss, or a motion for judgment on the pleadings, into

19   a motion for summary judgment.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th

20   Cir. 2018).  A court may judicially notice a fact that is "not subject to reasonable dispute," *i.e.*, a

21   fact that is "generally known," or "can be accurately and readily determined from sources whose

22   accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).  If a judicially noticeable

23   document contains disputed facts, the court may notice the document, but not the disputed facts

24   therein.  *Khoja*, 899 F.3d at 999 ("[A] court cannot take judicial notice of disputed facts contained

25   in [judicially noticeable] public records.") (citation omitted).

26   The Court need not take judicial notice of Plaintiff's Complaint because the document is

27   already in the record and subject to MBUSA's Motion.  RJN, Exhibit A, ECF No. 37-1.

28   Case No.: 22-cv-04427-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

1    Regarding the remaining documents, Plaintiff challenges their applicability to his case, but

2    Plaintiff has identified no facts within the documents he disputes.  Because Exhibits B–F are all

3    district court records submitted in the *Emissions* case, the Court GRANTS MBUSA's request and

4    will take judicial notice of Exhibits B–F.  *See Ray v. Lara*, 31 F.4th 692, 697 (9th Cir. 2022)

5    (courts "may take judicial notice of district court records").

6    **IV.    DISCUSSION**

7        MBUSA moves for judgment on the pleadings as to each of Plaintiffs' seven claims on

8    several grounds.  First, MBUSA contends broadly that all of Plaintiff's claims fail as a matter of

9    law because they are barred by the *Emissions* class action settlement.  Second, MBUSA argues

10    that even if not barred by the class action settlement, each claim individually fails for various

11    reasons.

12        The Court addresses MBUSA's arguments below.

13        **A.    Generalized "Defendants" Allegations**

14    The Court first addresses MBUSA's argument that "[i]t is confusing as to which Defendant(s)

15    Plaintiff is referring to" because the Complaint frequently groups the Defendants together.  Mot.

16    8.  The Court agrees.  "[B]y lumping all [Defendants] together, Plaintiff[] ha[s] not stated

17    sufficient facts to state a claim for relief that is plausible against one Defendant."  *In re iPhone*

18    *Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) (emphasis in original); *see*

19    *also Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014)

20    ("Specific identification of the parties to the activities alleged by the plaintiffs is required in this

21    action to enable the defendant to plead intelligently").  Plaintiff's failure to parse out which

22    allegations are levied against which Defendants "makes it exceedingly difficult, if not impossible,

23    for individual Defendants to respond to Plaintiff['s] allegations."  *iPhone Application Litig.*, 2011

24    WL 4403963, at *8.  Defendants should not have to guess amongst themselves as to whom a

25    specific "Defendants" reference Plaintiff intended to apply or even whether it applies to some yet-

26    to-be-named Doe party.

27        For the same reason, the Court cannot guess as to whether any such "Defendants"

28    Case No.: 22-cv-04427-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

allegations would suffice to state a claim had they been asserted against any one particular defendant.  For the reasons set forth below, the Court will grant MBUSA's motion with leave to amend.  In any amended complaint, Plaintiff must identify what action each Defendant took that would state a claim for relief without resorting to generalized allegations against "Defendants" as a whole.

### B.     Whether Plaintiff's Claims Are Barred by the *Emissions* Class Action Settlement

MBUSA first argues that Plaintiff's claims are all "directly related to the subject matter in *Emissions* and were dismissed with prejudice as a result of the class-wide settlement in that action."  Mot. 5.  Because Plaintiff "belonged to the settlement class as a purchaser of a 2011 Mercedes-Benz ML350 BlueTEC Class Vehicle," and Plaintiff "did not timely opt-out of the Emissions Class Action Settlement," the *Emissions* order permanently enjoins Plaintiff from pursuing such claims.  *Id.* at 6.  Plaintiff argues that the *Emissions* settlement involves class claims for misrepresentations regarding emissions which is unrelated to Plaintiff's allegations here concerning a broken engine and a broken turbo.  Opp. 4.

The *Emissions* suit involved allegations that the vehicles subject to the lawsuit "were equipped with emission control systems that caused the [vehicles] to emit more nitrogen oxides ('NOx') than consumers reasonably expected, and more NOx than was permitted under federal and state clean air laws."  ECF No. 37-3 at 3.   Whether Plaintiff's claims are barred by the *Emissions* settlement depends on (1) whether Plaintiff is a member of the *Emissions* class, and (2) if so, whether Plaintiff's claims in this action fall within the scope of the release in the *Emissions* settlement.

First, as a purchaser of a 2011 Mercedes-Benz ML350 BlueTEC Class Vehicle, Plaintiff is undoubtedly a member of the Class.  *See* Class Action Settlement Notice ("Settlement Notice"), ECF No. 37-3 at 3 (showing ML350 BlueTEC vehicles from 2010-2014 listed as "Subject Vehicles").  Second, the Settlement Notice provides that by staying in the Class and failing to opt-out, any class member "cannot sue the Mercedes Defendants or Bosch Defendants or be part of

United States District Court
Northern District of California

any other lawsuit against the Mercedes Defendants or Bosch Defendants about the issues" in the *Emissions* case. *Id.* at 11. Specifically, by failing to opt-out, all class members release "all claims, demands, action, or causes of action of any kind," "arising from, in whole or in part, or in any way related to the BlueTEC Diesel Matter." *Id.* at 12. "BlueTEC Diesel Matter" means all claims arising from or in any way relating to:

> (1) the design, manufacture, assembly, testing, development, installation, performance, presence, disclosure, or nondisclosure of any auxiliary emission control device ("AECD") (as defined in 40 C.F.R. § 86.1803-01) or defeat device (as defined in 40 C.F.R. § 86.1803-01 or 42 U.S.C. § 7522(a)(3)(B)) in any Subject Vehicle, as that term is defined in Section 2.70 of the Class Action Agreement;

> (2) the design, manufacture, assembly, testing, development, installation, or performance of emission control equipment and methods and related hardware or software in Subject Vehicles, including Diesel Exhaust Fluid and associated equipment, Selective Catalytic Reduction systems, electronic control units, and emission-related software programming, coding, and calibrations;

> (3) overpayment or diminution in value related to the design, manufacture, assembly, testing, development, installation, or performance of emission control equipment and methods and related hardware or software in Subject Vehicles;

> (4) the actual or alleged noncompliance of any Subject Vehicle with state or federal environmental or emissions standards;

> (5) the marketing or advertisement of the emissions or environmental characteristics or performance of any Subject Vehicle, including as clean diesel, clean, low emissions, green, environmentally friendly, and/or compliant with state or federal environmental or emissions standards;

> (6) the marketing or advertisement of the fuel efficiency, fuel economy, mileage, power, drivability, or performance of any Subject Vehicle, to the extent related in any way to the emissions performance, the design, manufacture, assembly, testing, development, installation, or performance of emission control equipment and methods, and related hardware or software;

> (7) any badges, signage, or BlueTEC labels on the Subject Vehicles, including any badges or signage placed on the Subject Vehicles at the point of sale or in an advertisement;

United States District Court
Northern District of California

(8) performance of the AEM in a Subject Vehicle, exclusive of the Extended Modification Warranty and any "Lemon Law" protections available to Class Members;

(9) whether the Subject Vehicles meet or exceed (or met or exceeded) consumer expectations, to the extent related in any way to the emissions performance, the design, manufacture, assembly, testing, development, installation, or performance of emission control equipment, and methods and related hardware or software; or

(10) the subject matter of the Action as well as events or allegations related to the Action, with respect to the Subject Vehicles.

Without limiting the foregoing, "BlueTEC Diesel Matter" includes allegations that (i) are related to any Subject Vehicle, (ii) relate to conduct by a Released Party that predates the date of the Class Action Settlement, and (iii) formed or relate to the factual basis for a claim that was made or could have been made in the Complaint.

*Id.* at 13–14.

Second, as to whether Plaintiff's claims in this action fall within the scope of the release, the Settlement Notice does not discuss whether turbos, a device that compresses the intake air in an engine, is considered an emission control device such that claims involving turbos would fall within the scope of the *Emissions* settlement.

Turning to the Complaint, Plaintiff's claims all stem from allegations that (1) Defendants damaged Plaintiff's vehicle while the vehicle was their custody, and (2) repairs to Plaintiff's brand-new Turbo purchased in Florida should be performed under a warranty. *See generally* Compl. MBUSA argues that Plaintiff's claims "pertaining to an allegedly defective turbo which controls emissions, are directly related to the subject matter of *Emissions*, and therefore, covered by the settlement's release of claims." Mot. 6. The Court recognizes that the Complaint does repeatedly refer to "the Class Action lawsuit." For example, the Complaint states that Plaintiff advised Monterey MB that "as a result of a previous Class Action lawsuit, Defendants were responsible for replacing parts, pursuant to the Settlement Agreement of such Class Action lawsuit." Compl. ¶ 23. However, the Court finds that it is not apparent from the face of the Complaint, nor in the documents subject to the Court's judicial notice, that Plaintiff's claims relating to the allegedly defective turbo would fall within the scope of "the subject matter" the

Case No.: 22-cv-04427-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

*Emissions* suit.  MBUSA states that the allegedly defective turbo "controls emissions" and is therefore "directly related to the subject matter of Emissions," but offers no support for this statement.

Accordingly, MBUSA has not established that it is entitled to judgment on the pleadings the grounds that Plaintiff's claims are barred by the *Emissions* suit.  The Court proceeds to consider Defendants' remaining arguments below.

### C.    First Cause of Action (Unjust Enrichment)

Under California law, the elements of an unjust enrichment claims are (1) the receipt of a benefit and (2) the unjust retention of the benefit at the expense of another.  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).  MBUSA argues that Plaintiff's unjust enrichment fails because "Plaintiff has done nothing to demonstrate that either of these elements has been met."  Mot. 8.

Here, Plaintiff alleges that Defendants were "unjustly enriched at the expense of Plaintiff" by "sell[ing] parts, labor, and diagnostic services, and thereby generat[ing] income, by promising a warranty, which Defendants had no intention of honoring."  Compl. ¶ 52.  It is unclear from the Complaint what benefit Plaintiff contends Defendants received at the expense of Plaintiff.  Plaintiff alleges that Defendants "failed to honor the turbo warranty or repair Plaintiff's vehicle," but there are no allegations that Defendants retained any benefit from Plaintiff in the process.  Opp. 6.  Plaintiff also does not explain which "parts, labor, and diagnostic services" he contends Defendants sold to Plaintiff.  Compl. ¶ 52.  While Plaintiff does seek recovery of the purchase price of the Subject Vehicle, $10,000 worth of "previous repairs made within past six months," $35,000 for the "repair of engine," and other car rental and hotel fees, he does not elaborate on these expenses and fails to allege whether these are benefits Defendants unjustly retained at the expense of Plaintiff.  *See* Compl. ¶ 13.  It is also not clear from the allegations that Plaintiff actually paid for the repair of the engine.  Rather, the Complaint alleges that Defendants "stat[ed] that the repair would cost approximately thirty-five thousand dollars" but Plaintiff does not allege he chose to proceed with the repair.  *Id.* ¶ 43.

United States District Court
Northern District of California

1    Plaintiff has failed to state a claim for unjust enrichment.  Accordingly, the Court

2    GRANTS MBUSA's motion WITH LEAVE TO AMEND as to Plaintiff's first cause of action.

3        **D.    Second Cause of Action (Violation of Business & Professions Code Section
          17200 Claim ("UCL"))**

4        MBUSA next argues that Plaintiffs' UCL claim should be dismissed because Plaintiff has

5    not met Rule 9(b)'s heightened pleading standard, and Plaintiff "fails to plead any specific

6    allegations pertaining to the facts of the instant case which would demonstrate that MBUSA

7    engaged in any unlawful, unfair or fraudulent conduct as prohibited by the UCL."  Mot. 9.  In

8    order to bring a California UCL claim, Plaintiff must show "either an (1) 'unlawful, unfair, or

9    fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'"

10   *Spindler v. Johnson & Johnson Corp.*, No. C 10-01414 JSW, 2011 WL 13278876, at *6 (N.D.

11   Cal. Jan. 21, 2011) (quoting *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir.

12   2004)).  If the UCL claim is grounded in fraud, "the pleading of that claim as a whole must satisfy

13   the particularity requirement of Rule 9(b)."  *Id.*

14       It is not clear whether Plaintiff is relying on the "unlawful," "unfair," or "fraudulent" prong

15   of the UCL.  Under any theory, Plaintiff has not sufficiently stated a claim.  As an initial matter,

16   Plaintiff's UCL claim—which centers on Defendants' "concealment," "non-disclosure,"

17   "misleading and deceptive practices"—appears to be grounded in fraud and so the pleading of that

18   claim must satisfy the particularity requirement of Rule 9(b).

19       As to the unlawful prong, unlawful business activity includes "anything that can properly

20   be called a business practice and that at the same time is forbidden by law."  *Spindler*, 2011 WL

21   13278876, at *6.  Plaintiff alleges that "[t]he dishonesty and negligence of Defendants as alleged

22   herein constitutes unlawful, deceptive and unfair business practices within the meaning of the

23   California Consumer Legal Remedies Act."  Compl. ¶ 56.  Defendants contend, relying on *Elias*,

24   903 F. Supp. 2d 843, 858–59 (N.D. Cal. 2012), that Plaintiff has not plead an unlawful act because

25   the allegations "do not support anything other than, at best, breach of warranty."  Opp. 11.  But

26   construed liberally, Plaintiff also seems to allege a violation of the UCL for the additional reason

27

28   Case No.: 22-cv-04427-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                                        10

United States District Court
Northern District of California

1   that Defendants' "concealment and non-disclosure of the presence of warrantable conditions,

2   warrantable parts, and warranty periods," constitutes a violation of "the Federal Clean Air Act, 42

3   U.S.C. 7541, the California Health and Safety Code 43205 et seq."  Compl. ¶ 64.

4        Whether based on an alleged violation of the Consumer Legal Remedies Act, the Federal

5   Clean Air Act, or the California Health and Safety Code, Plaintiff has provided no additional

6   support for these allegations beyond a passing reference to each law.  And more importantly,

7   Plaintiff has not explained why Defendants' conduct was purportedly unlawful under these laws.

8        Turning to the "unfair" prong, Plaintiff offers nothing other than the CLRA violation

9   discussed above and therefore the claim, which hinges on that theory, must also be dismissed.

10  Compl. ¶ 58.  To the extent Plaintiff relies on its allegation that Defendants "knowingly

11  exacerbated the damages to the subject vehicle by operating it while the engine was starved of oil"

12  and this "caused the stereo system not to function correctly" to support its claim under the "unfair"

13  prong, this too fails.  Compl. ¶¶ 61–62.  Even with this additional context, Plaintiffs' UCL claim

14  based on this act of knowingly operating the Subject Vehicle without oil lacks the requisite

15  particularity to sustain this cause of action because it does not specify who Plaintiff alleges took

16  this act.  For example, the Complaint alleges that Mr. Bleyenberg admitted that the engine

17  suffered damaged "as a result of Defendants operation of the engine" and Mr. Bleyenberg "or his

18  agent" operated the engine, "notwithstanding it lacked oil."  Compl. ¶¶ 39–40.

19       As to the fraudulent prong, Plaintiff alleges that Defendants' "concealment and non-

20  disclosure of the presence of warrantable conditions, warrantable parts, and warranty periods is

21  unfair and deceptive and has the capacity to mislead or deceive consumers and members of the

22  public" and "[t]hese practices affect plaintiff's business, property, and their health in general."

23  Compl. ¶ 59.  But again, Plaintiff provides no factual support regarding *what* was concealed or not

24  disclosed, how this mislead Plaintiff, how this deceived members of the public, or how these

25  practices "affect plaintiff's business, property, and their health in general."  *Id.*

26       Plaintiff has not met Rule 9(b)'s heightened pleading standard to state his UCL claim

27  grounded in fraud.  Accordingly, the Court GRANTS MBUSA's motion WITH LEAVE TO

28  Case No.: 22-cv-04427-EJD

ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

1   AMEND as to Plaintiff's second cause of action.

2         **E.**      **Third Cause of Action (Breach of Contract)**

3         To state a claim for breach of contract in California, a plaintiff must plead: "(1) the

4   existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

5   defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v.*

6   *Goldman*, 51 Cal. 4th 811, 821 (2011).  To allege the existence of a contract, a "plaintiff may set

7   forth the contract verbatim, attach it as an exhibit, or plead it according to its legal effect."

8   *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, 2013 WL 3357929, at *6 (N.D. Cal. July 3, 2013).  A

9   pleading of the legal effect of a contract is sufficient where the plaintiff supports its assertions with

10   facts and testimonial evidence pointing to the plausible existence of contractual terms that would

11   give rise to the asserted legal effect.  *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d

12   1094, 1102 (E.D. Cal. 2010).

13         MBUSA argues that Plaintiff's breach of contract claim fails because "Plaintiff has failed

14   to identify any operative contract and groups together the multiple Defendants, making the

15   allegations unintelligible."  Mot. 14.  The Court agrees.  The Complaint alleges broadly that

16   "[e]xpress and implied contracts were created between Defendants and Plaintiff and the general

17   public."  Compl. ¶ 68.  This is not sufficient to plead the first element required for a breach of

18   contract claim: the existence of a contract between Plaintiff and MBUSA.  Additionally, Plaintiff

19   brings his breach of contract claim against all Defendants, but it remains unknown which

20   Defendant, if not all, Plaintiff is alleging he had a contractual relationship with, and which contract

21   governs.  Even assuming Plaintiff is referring to a contract entered into with respect to this Subject

22   Vehicle's warranties and repairs, the Complaint discusses multiple repairs and interactions with

23   multiple Defendants, so more specificity is required to put the Defendants on notice of the

24   contractual terms that would have the legal effect of binding Defendants to perform in a particular

25   way.

26         Having failed to plead the first essential element—the existence of a contract—Plaintiff's

27   breach of contract claim fails.  Accordingly, the Court GRANTS MBUSA's motion WITH

United States District Court
Northern District of California

1    LEAVE TO AMEND as to Plaintiff's third cause of action.

2        **F.      Fourth Cause of Action (Breach of Warranties)**

3        Plaintiff brings claims against all Defendants for breach of both implied and express

4    warranties.  Compl. ¶ 73.  MBUSA argues that both fail because "it is entirely unclear which

5    warranty or warranties serve as the basis for the claim."  Mot. 15.

6        Express Warranty.  For a breach of express warranty claim, "a plaintiff must prove (1) the

7    seller's statements constitute an affirmation of fact or promise which relates to the goods or a

8    description of the goods; (2) the statement was part of the basis of the bargain; and (3) the

9    warranty was breached."  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.App.4th 1213, 1227 (2010)

10   (cleaned up).  Further, a breach of express warranty claim requires that the plaintiff identify a

11   "specific and unequivocal written statement" about the product that constitutes an "explicit

12   guarantee[ ]."  *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2014 WL 589388, at *8

13   (N.D. Cal. Feb. 14, 2014), *aff'd sub nom. In re iPhone 4s Consumer Litig.*, 637 F. App'x 414 (9th

14   Cir. 2016) (quotations omitted).

15       Here, Plaintiff alleges that the "brand-new turbo manufactured and sold by Defendants,

16   Mercedes-Bens, carried with it a warranty."  Compl. ¶ 12.  But Plaintiff has not identified "a

17   specific and unequivocal written statement" constituting an explicit guarantee about the Subject

18   Vehicle, the turbo Plaintiff purchased, or any services performed.  *See Yastrab v. Apple Inc.*, 173

19   F. Supp. 3d 972, 982 (N.D. Cal. 2016).  For that reason, Plaintiff has failed to state a claim for

20   breach of express warranty.

21       Implied Warranty.  "Under the Song-Beverly Act, every retail sale of 'consumer goods' in

22   California includes an implied warranty by the manufacturer and the retail seller that the goods are

23   'merchantable.'"  *Mexia v. Rinker Boat Co.*, Inc., 174 Cal. App. 4th 1297, 1303 (quoting Cal. Civ.

24   Code, §§ 1791.3, 1792).  To satisfy the Song-Beverly Act, "products must (1) pass without

25   objection in the trade under the contract description; (2) be fit for the ordinary purposes for which

26   those goods are used; (3) be adequately contained, packaged, and labeled; and (4) conform to the

27   promises or affirmation of fact made on the container or label."  *Gagetta v. Walmart, Inc.*, No.

28   Case No.: 22-cv-04427-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
                          13

*United States District Court*
*Northern District of California*

3:22-CV-03757-WHO, 2022 WL 17812924, at *9 (N.D. Cal. Dec. 19, 2022) (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n. 2 (9th Cir. 2009)).  This is a low standard for products to meet, where a product "need not be perfect in every detail so long as it 'provides for a minimum level of quality.'"  *McGee v. Mercedes-Benz USA, LLC*, 612 F. Supp. 3d 1051, 1061 (S.D. Cal. 2020) (quoting *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 979 (C.D. Cal. 2014)).

Plaintiff alleges that Defendants breached the implied warranty of merchantability because Defendants' "goods and services" were "not merchantable at the time of sale due to Defendants' misbranding, concealment and non-disclosure."  Compl. ¶ 74.  Plaintiff also alleges claims for breach of implied warranty for fitness for a particular purpose.  *Id.* ¶ 75.  Again, Plaintiff refers to "Defendants' conduct" broadly and fails to include any allegations regarding which "vehicles and parts and services" Plaintiff is referring to.  *Id.* ¶¶ 74–75.  These allegations lack the requisite specificity to state a claim for breach of express warranty, particularly where Plaintiff alleges he receives multiple services from multiple Defendants.  *See Christiansen v. Kimberly-Clark Corp.*, No. 23-CV-01095-AMO, 2024 WL 1182864, at *2 (N.D. Cal. Mar. 19, 2024) (dismissing breach of warranty claims where plaintiff "has not alleged the terms of any warranty or [plaintiff's] reasonable reliance on such warranty").

Accordingly, the Court GRANTS MBUSA's motion WITH LEAVE TO AMEND as to Plaintiff's fourth cause of action.

### G.   Fifth Cause of Action (Negligent Misrepresentation)

In his fifth cause of action, Plaintiff alleges all Defendants "negligently and recklessly misrepresent and conceal, from customers, the existence of these warranties provided by law."  Compl. ¶ 78.  The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.  *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).  In contrast to fraud, negligent misrepresentation does not

Case No.: 22-cv-04427-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
14

1    require knowledge of falsity.  *Id.*  (citations omitted).  A defendant who makes false statements

2    "honestly believing that they are true, but without reasonable ground for such belief, ... may be

3    liable for negligent misrepresentation."  *Id.* (citations omitted).  However, a positive assertion is

4    required; an omission or an implied assertion or representation is not sufficient.  *Id.*

5            MBUSA argues that the fifth cause of action should be dismissed because Plaintiff "has

6    failed to plead any of the required elements with specificity."  Mot. 16.  MBUSA cites *Small v.*

7    *Fritz Companies* for the proposition that "a cause of action for negligent misrepresentation must

8    be plead with specificity."  Mot. 16 (emphasis in original) (citing 30 Cal. 4th 167, 184 (2003)).

9    But that holding applied to complaints for negligent misrepresentation in a shareholder's action—

10   the court "express[ed] no view on whether this pleading requirement would apply in other actions

11   for negligent misrepresentation."  *Small*, 30 Cal. 4th at 184.  Since *Small*, other California courts

12   have required negligent misrepresentation claims to be plead with particularity.  *See, e.g.*, *Charnay*

13   *v. Cobert*, 145 Cal. App. 4th 170, 185 (2006) ("Fraud and negligent misrepresentation must be

14   pleaded with particularity and by facts that show how, when, where, to whom, and by what means

15   the representations were tendered") (cleaned up); *see also SI 59 LLC v. Variel Warner Ventures*,

16   LLC, 29 Cal. App. 5th 146, 155 (2018) (negligent misrepresentation claim dismissed where it was

17   "not alleged with sufficient particularity").

18           Here, Plaintiff alleges "Defendants" misrepresented "these warranties."  Compl. ¶ 78.  The

19   Court presumes Plaintiff is referring to the warranties alleged in his breach of warranty cause of

20   action discussed above, including the warranty that came with the purchase of his new turbo.

21   *See id.* ¶ 12.  As above, Plaintiff has not adequately alleged the existence of a warranty.  *See supra*

22   Part IV(F).  Having relied on the warranties as the "material fact" that was allegedly

23   misrepresented, Plaintiff has not adequately plead the first element of his negligent

24   misrepresentation cause of action.

25           Plaintiff also generally alleges that "Defendants" mispresented the warranties "through

26   service and sales advisors at the point of sale."  Compl. ¶¶ 78–79.  Although Plaintiff alleges that

27   Defendant Wienik Bleyenberg (1) "blamed Plaintiff and the Florida certified Mercedes-Benz

28   Case No.: 22-cv-04427-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS
     15

repair facility" for the damage to the vehicle, (2) "admitted that the turbo" did "nothing improper," and (3) "stated that, because Plaintiff elected to have the repair performed at a certified Mercedes-Benz repair facility," Plaintiff was therefore "liable for the damage," it remains unclear whether Plaintiff contends that Mr. Bleyenberg made the negligent misrepresentations.  *See* Compl. ¶¶ 31–35.  The Complaint thus not adequately identify who made the alleged representation.

Nor does the Complaint allege why MBUSA, or the other Defendants, reasonably should have known the representation regarding the warranty was false.  *See SI 59*, 29 Cal. App. 5th at 155 (negligent misrepresentation claim not plead with sufficient particularity where complaint did not identify "who made the representation" and where there was "no allegation as to why [Defendant] reasonably should have known the representation was false").  Thus, Plaintiff has not adequately plead the second element, which requires that the person who made the representation did so without reasonable ground for believing it to be true.

Finally, Plaintiff's conclusory allegations that (1) the representations "were negligently and recklessly made" and (2) Plaintiff and members of the general public "have been damaged in an amount to be proven at trial," are insufficient to plead the third and fifth elements of the claim.[1]  *Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

Accordingly, the Court GRANTS MBUSA's motion WITH LEAVE TO AMEND as to Plaintiff's fifth cause of action.

### H.     Sixth Cause of Action (Declaratory and Injunctive Relief)

Plaintiff's sixth cause of action seeks declaratory and injunctive relief against all Defendants.  Compl. ¶¶ 81–84.  MBUSA argues that this cause of action fails because "it solely consists of two paragraphs of bare and conclusory allegations."  Mot. 16.  Plaintiff does not address this argument, or otherwise defend this cause of action, in his opposition.

---

[1] Plaintiff's allegation that he "relied upon this warranty and, thereby, advised the Florida certified Mercedes-Benz repair facility to purchase and install the brand-new turbo" is likely sufficient to satisfy the fourth element of the claim: justifiable reliance on the misrepresentation.

1    "The fundamental basis of declaratory relief is the existence of an actual, present

2    controversy over a proper subject." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 79 (2002) (citing 5

3    Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 817, p. 273).  A request for declaratory relief

4    "will not create a cause of action that otherwise does not exist." *Id.* (citations omitted).  Rather,

5    "an actual, present controversy must be pleaded specifically" and "the facts of the respective

6    claims concerning the [underlying] subject must be given." *Id.*

7         Here, having found that Plaintiff has failed to state a claim as to its other causes of action,

8    Plaintiff cannot sustain its sixth cause of action for declaratory and injunctive relief.  *See Shroyer*

9    *v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (affirming dismissal of

10   declaratory relief claims where dismissal of underlying claims also affirmed).

11        Accordingly, the Court GRANTS MBUSA's motion WITH LEAVE TO AMEND as to

12   Plaintiff's sixth cause of action.

13   **I.        Seventh Cause of Action (Fraud)**

14        Finally, Plaintiff brings its seventh cause of action against all Defendants for fraud.

15   Compl. ¶¶ 85–93.  The elements of fraud are "(a) misrepresentation (false representation,

16   concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e.,

17   to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small*, 30 Cal. 4th at 173

18   (quotations omitted).  It is "established law, in this circuit and elsewhere, that Rule 9(b)'s

19   particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*,

20   317 F.3d 1097, 1103 (9th Cir. 2003).  "[W]hile a federal court will examine state law to determine

21   whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b)

22   requirement that the circumstances of the fraud must be stated with particularity is a federally

23   imposed rule." *Id.* (quotations and citations omitted).

24        Here, Plaintiff's cause of action for fraud "must be accompanied by the who, what, when,

25   where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

26   Cir. 2009) (citations omitted).  Plaintiff must "set for *more* than the neutral facts necessary to

27   identify the transaction." *Id.* (emphasis in original).

28   Case No.: 22-cv-04427-EJD
     ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

As to the "who," Plaintiff again improperly alleges that all Defendants engaged in fraud when "they" promised Plaintiff that, pursuant to "the warranty," "they" would provide complete automotive protective for the subject vehicle, in the event it was damaged as a result of a defective Mercedes-Benz part." *Id.* 86.  Plaintiff further alleges that "Defendants, through Defendant Wienik Bleyenberg, tacitly admitted that it is misleading for Defendants to permit independent automotive repair facilities to hold themselves out as being Mercedes-Benz 'Master Technicians.'" Compl. ¶ 88.  This is insufficient to establish *who* Plaintiff alleged committed the fraudulent misconduct.  Which Defendants were allegedly acting through Mr. Bleyenberg?  Is Mr. Bleyenberg also alleged to have committed fraud?

Plaintiff also fails to allege the particular circumstances surrounding the alleged misrepresentations.  Plaintiff alleges that Defendants "made a material misrepresentation" when they promised Plaintiff they would "provide complete automotive protective for the subject vehicle," and "Defendants knew or believed that they would not perform their obligations under the warranty at the time they made such promises to Plaintiff," but without additional detail regarding the warranty, Defendants cannot adequately respond to what was allegedly promised. *See* Compl. ¶¶ 86, 90.  Similarly, Plaintiff's conclusory allegations to support the reliance prong of a fraud cause of action—that "Defendants intended for Plaintiff to rely on their material misrepresentations" (*id.* ¶ 91) and "Plaintiff, thereby, relied upon Defendants' material misrepresentations" (*id.* ¶ 92)—are insufficient to satisfy the particularity requirement.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) ("In order to plead fraud with particularity, the complaint must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice").

## V.    CONCLUSION

In dismissing a complaint or granting judgment on the pleadings, courts will generally grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 812 (N.D. Cal. 2022) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

Case No.: 22-cv-04427-EJD
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

1    Here, it is not apparent that the deficiencies identified in Plaintiff's Complaint could not

2  possibly be cured by amendment.  Accordingly, the Court GRANTS MBUSA's motion, and

3  Plaintiff's claims against MBUSA are DISMISSED WITH LEAVE TO AMEND.  Any amended

4  complaint must be filed within 21 days of this Order.

5

6    **IT IS SO ORDERED.**

7  Dated: March 27, 2024

8

9

10                                     EDWARD J. DAVILA
                                       United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

United States District Court
Northern District of California